IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DIEGO SÁNCHEZ-RUIZ,

        Plaintiff

        v.

FERGUSON OF PUERTO RICO, INC., et al.,

        Defendants

CIVIL NO. 09-1373 (JP)

## OPINION AND ORDER

Before the Court is Defendants Ferguson of Puerto Rico, Inc., Frank Jara and Iván Pizarro's motion for summary judgment (**No. 23**), and Plaintiff Diego Sánchez-Ruiz's opposition thereto (No. 31). Plaintiff brought the instant action pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*; Puerto Rico Law 44 of July 2, 1985 ("Law 44"), P.R. Laws Ann. tit. 1, § 501 *et seq.*; and Puerto Rico Law 80 of May 30, 1976 ("Law 80"), P.R. Laws Ann. tit. 29, § 185(a). For the reasons stated herein, Defendants' motion for summary judgment is hereby **GRANTED.**

## I.   MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE

The following material facts were deemed uncontested ("ISC UMF") by all parties hereto at the September 17, 2009, Initial Scheduling Conference (No. 11).

    1.   Plaintiff is of legal age, single and resident of Puerto Rico.

CIVIL NO. 09-1373 (JP)              -2-

2.    Ferguson of Puerto Rico ("Ferguson") is a Corporation
      organized under the laws of Puerto Rico or authorized to
      do business under the laws of Puerto Rico.

3.    Frank Jara ("Jara") is of legal age, resident of Puerto
      Rico and at relevant times to the complaint General
      Manager of Ferguson of Puerto Rico.

4.    Jara was the General Manager of Ferguson during
      Plaintiff's tenure with the Company.

5.    Iván Pizarro ("Pizarro") is of legal age, resident of
      Puerto Rico and Manager of Ferguson's operations in Ponce,
      Puerto Rico.

6.    Jara and Pizarro were the supervisors of Plaintiff and
      company decision makers.

7.    In August 2005, Plaintiff began his employment with
      Ferguson as a Sales Trainee in the Carolina facilities.

8.    Plaintiff's salary was $2,750.00 per month plus car
      allowance and fringe benefits.

9.    Plaintiff was hired as a "trainee" and given a "sales and
      management trainee syllabus/checklist."

10.   During the first two months, Plaintiff worked at the
      Carolina facilities.

11.   After the first two months, Plaintiff was transferred to
      the Ponce facilities.

CIVIL NO. 09-1373 (JP)          -3-

12.  Upon beginning his employment with the company, Plaintiff approved his 90-day probationary period.

13.  Plaintiff's salary rate was $16.00 per hour, plus car allowance, car expenses, Christmas bonus and performance bonus.

14.  Plaintiff approved his job performance evaluation for the year 2006.

15.  During 2006, Plaintiff received a bonus of $2,299.00.

16.  During the inventory of January 2007, Plaintiff was required to work.

17.  Jara questioned Plaintiff about why he had left the night before without concluding the task assigned by Pizarro. Jara complained that Pizarro had to work until 10:30 p.m. to conclude the quotation, that it was expected from Plaintiff to remain until said hour.

18.  Plaintiff explained that he was exhausted and could not work anymore on that day.

19.  On May 30, 2007, Plaintiff started work on a project the day before its May 31, 2007 deadline.

20.  On May 31, 2007, Defendants told Plaintiff that he lacked passion for his job, had no initiative and had not learned the company's products.

CIVIL NO. 09-1373 (JP)              -4-

21. After the meeting, Plaintiff wrote to Jara and Pizarro, responding to the verbal charges made by them as to "lack of passion" and initiative.

22. On July 2, 2007, Plaintiff Diego Sánchez-Ruiz's ("Sánchez-Ruiz") performance was reviewed by the company. As reviewed by his supervisor Pizarro, Plaintiff was found to "need improvement" in practically every single area of his work performance and found not to even "meet expectations" in any area.

23. In July 2007, Plaintiff was given a "needs improvement" performance evaluation and three memos (on the same day), pointing out that he had to improve his performance.

24. On July 12, 2007, a customer informed Plaintiff that it had not received a quote it had previously requested.

25. Plaintiff requested sick leave in July 2007.

26. When Plaintiff returned from his sick leave, he was transferred from Ponce to Carolina "for business needs." This was on/or around August 12, 2007.

27. On August 28, 2007, Plaintiff called a supplier and informed him that he (Plaintiff) had mistakenly purchased the wrong product, and offered to return the product at Ferguson's expense.

28. Plaintiff was terminated on September 6, 2007.

CIVIL NO. 09-1373 (JP)          -5-

29.  On  December  7,  2008,  Plaintiff  filed  a  charge  of
     discrimination before the Puerto Rico Anti-Discrimination
     Unit.

30.  The  Puerto  Rico  Anti-Discrimination  Unit  and  the  Equal
     Employment  Opportunity  Commission  issued  a  right-to-sue
     letter in favor of Plaintiff.

The following facts are deemed uncontested by the Court ("UMF")
because they were included in the motion for summary judgment and
opposition and were agreed upon, or they were properly supported by
evidence and not genuinely opposed.

1.  Plaintiff  Sánchez-Ruiz  learned  that  there  was  an  opening
    in  Ferguson  through  Diego  Sánchez-Iglesias,  his  father,
    who  had  spoken  with  Ferguson's  management  about  an
    opportunity  in  the  sales  trainee  program,  and  who  told
    Plaintiff  Sánchez-Ruiz  to  apply  for  the  position  of  sales
    trainee.

2.  Under  the  sales  trainee  program,  the  trainee's  progress
    will  depend  on  how  (s)he  is  responding,  as  well  as  the
    needs  of  the  store  or  branch.   Not  all  trainees  complete
    all  phases  and  all  tasks  in  the  same  amount  of  time,
    because  each  trainee  is  different  and  must  thus  be  dealt
    with  on  a  case-by-case  basis.   The  program  is,  thus,  not
    a  rigid  formula,  but  merely  a  guideline  to  be  followed,  as
    expressly  stated  in  the  program's  syllabus.

CIVIL NO. 09-1373 (JP)              -6-

3.   Upon being hired, Plaintiff Sánchez-Ruiz acknowledged that
     he was bound to abide by all of Ferguson's policies, rules
     and regulations.

4.   Ferguson's    Equal    Employment    Opportunity    policy
     specifically provides that it is the philosophy, practice
     and policy of the company to provide equal employment
     opportunities   to   all   associates   and   applicants   for
     employment, and that no individual is to be discriminated
     against in employment or promotional practices because of
     race,   color,   religion,   sex,   age,   national   origin,
     citizenship, veteran status or disability.

5.   Ferguson's Short-Term Absence policy mandates that, at the
     Manager's   discretion,   an   employee   excuse   his   or   her
     absence by submitting the written opinion of a licensed
     physician regarding the necessity of any absence from
     work.

6.   Plaintiff Sánchez-Ruiz acknowledged receipt of Ferguson's
     Equal Employment and Anti-Harassment Policy.

7.   Plaintiff Sánchez-Ruiz never filed an internal complaint,
     written or verbal, for discrimination while at Ferguson.

8.   Plaintiff   Sánchez-Ruiz   was   diagnosed   with   multiple
     sclerosis before he started working with Ferguson.

9.   Upon   being   hired,   Plaintiff   Sánchez-Ruiz   expressly
     certified to Ferguson that he had no disability, required

CIVIL NO. 09-1373 (JP)            -7-

        no accommodation to perform the duties of his position, and was able to work fifty (50) hours per week.

10.   During his first two months with Ferguson, Plaintiff worked at the warehouse.

11.   Plaintiff Sánchez-Ruiz was moved to inside sales approximately a little over a month after arriving in Ferguson's branch in Ponce.

12.   Plaintiff Sánchez-Ruiz was moved to inside sales because Ferguson needed an inside salesperson at its Ponce branch and because he would have a better environment in which to learn and progress than at the counter, which is more hectic.

13.   Although Plaintiff Sánchez-Ruiz was assigned to inside sales when he was transferred to Ferguson's branch in Ponce, he occasionally covered the counter area as well.

14.   Pizarro, Lucy Guzmán and Roberto Pacheco all took part in the training of Plaintiff Sánchez-Ruiz while he was at Ferguson's branch in Ponce, particularly regarding counter sales.

15.   Plaintiff received several trainings on different areas while working with Ferguson.

16.   Jara and Pizarro were both personal friends of Diego Sánchez-Iglesias, Plaintiff's father.

CIVIL NO. 09-1373 (JP)          -8-

17. Diego Sánchez-Iglesias, Plaintiff's father, works for Parker, which has been a supplier to Ferguson since 1989.

18. During his tenure with Ferguson, Plaintiff Sánchez-Ruiz requested, and was granted, several leaves of absence. None of his requests were ever denied, rejected or refused, nor was he ever admonished for taking too much time off from work.

19. Plaintiff Sánchez-Ruiz was never demoted and his salary was never reduced while working with Ferguson.

20. On or around July 10, 2006, Plaintiff submitted a medical excuse from Dr. Ángel Chinea, in which it was recommended that his work schedule be limited to eight (8) hours per day for the next three (3) months.

21. Ferguson is very flexible in accommodating its employees' personal needs, provided they finish their assigned tasks and are up-to-date with their workload.

22. Though Plaintiff Sánchez-Ruiz nominally worked ten (10) hours a day, he left either earlier or later than that on several occasions.  Once he had finished his tasks, he would request and receive permission to leave, or to go to a medical appointment.

23. Plaintiff Sánchez-Ruiz was not required to work weekends and holidays.  He only worked weekends twice a year, but

CIVIL NO. 09-1373 (JP)          -9-

       it was not mandatory.  The weekend day worked was for the purposes of doing inventory.

24. Ferguson, through Pizarro, offered to reduce Plaintiff Sánchez-Ruiz's work schedule, but he rejected this offer.

25. While with Ferguson, Plaintiff received both written and oral warnings as to his poor performance.

26. An order placed on August 30, 2006 that was processed by Plaintiff Sánchez-Ruiz was erroneously entered twice.

27. On October 11, 2006, Pizarro, Plaintiff's direct supervisor, admonished him for failing to provide Ferguson's salespersons with a copy of the quotes provided to customers.

28. On March 6, 2007, Plaintiff Sánchez-Ruiz was instructed to credit a customer with the value of some items it had returned to Ferguson because they had been shipped to the customer in excess of its order.  However, by April 18, 2007, Plaintiff had still not credited a customer with the value of some items said client had returned to Ferguson, as he had been instructed to do.

29. On April 23, 2007, a client complained to Pizarro about the fact that Plaintiff Sánchez-Ruiz had mistakenly entered an order for a "female" connector, instead of the "male" connector that the client needed and had ordered from Ferguson and that, in spite of the fact that the

CIVIL NO. 09-1373 (JP)          -10-

client had informed Plaintiff of this mistake, he had not corrected it.   The client informed Pizarro that this mistake had imperiled a very important project the client was working on, and that it may opt to contact any of Ferguson's competitors in the future.

30. Plaintiff received, acknowledged receipt, and agreed with an email sent to him by Pizarro on or around April 29, 2007, which is a written warning regarding customers' dissatisfaction with Plaintiff's service and performance.

31. Plaintiff Sánchez-Ruiz contacted at least one of Ferguson's clients, to apologize for having mishandled an order placed.

32. Plaintiff Sánchez-Ruiz met with Jara and Pizarro on May 31, 2007 to discuss his performance.

33. On June 6, 2007, Plaintiff Sánchez-Ruiz submitted a letter to Jara and Pizarro by email, addressing several issues touched upon during his meeting with them on May 31, 2007.

34. The letter submitted by Plaintiff Sánchez-Ruiz to Jara and Pizarro on June 6, 2007 concerning his performance was originally mailed from Diego Sánchez, Sr.'s email account to Plaintiff's email account on June 3, 2007, from where it was emailed to Jara and Pizarro.

35. Plaintiff Sánchez-Ruiz made no claim or charge about being disabled or about not having been trained properly by

CIVIL NO. 09-1373 (JP)              -11-

         Ferguson in the letter he submitted to Jara and Pizarro on June 6, 2007.

36.    Sometime after his meeting with Jara and Pizarro, Plaintiff Sánchez-Ruiz was again admonished in writing for not following Ferguson's procedures while processing a client's order for Eli Lilly Guayama.

37.    Also sometime after his meeting of May 31, 2007 with Jara and Pizarro, Plaintiff Sánchez-Ruiz was again admonished in writing for not following Ferguson's procedures while processing a quote for a client's order for TAPI.

38.    On June 15, 2007, Marianela Negrón, Accounts Payable Clerk, called attention to an error made by Plaintiff Sánchez-Ruiz while entering and processing an order by a customer, which represented a loss for Ferguson.

39.    On June 25, 2007, Marianela Negrón again informed Plaintiff Sánchez-Ruiz that he had made the same mistake while entering and processing an order for another customer, which represented a loss for Ferguson.

40.    On or around June 28, 2007, Plaintiff Sánchez-Ruiz was admonished in writing for not following orders Jara had given him regarding management and documentation of orders placed by clients, in relation to the management of quotes and orders from Baxter Aibonito.

CIVIL NO. 09-1373 (JP)            -12-

41.  On July 2, 2007, Plaintiff Sánchez-Ruiz's performance was
     reviewed, and found to need improvement in every area and
     that it did not meet Ferguson's expectations in any area.
     Plaintiff Sánchez-Ruiz signed this evaluation, did not
     object to it, and accepted its findings.

42.  After   Plaintiff   Sánchez-Ruiz   had   received   an
     unsatisfactory   performance   evaluation,   Diego
     Sánchez-Iglesias, his father, called Jara that same night
     to complain and to accuse him of building a case for
     terminating Plaintiff.

43.  Diego Sánchez-Iglesias, Plaintiff's father, spoke with
     Pizarro  many  times  about  Plaintiff  Sánchez-Ruiz's
     performance.

44.  On July 10, 2007, Plaintiff prepared a Purchase Order
     which contained an error which had to be corrected by
     Pizarro.

45.  Also on July 10, 2007, Pizarro admonished Plaintiff
     Sánchez-Ruiz for quoting and placing orders for the wrong
     products in relation to an order by a client.

46.  On  July  12,  2007,  a  customer  informed  Plaintiff
     Sánchez-Ruiz that it had not received a quote it had
     previously requested.

47.  On July 17, 2007, Plaintiff Sánchez-Ruiz again failed to
     follow proper company procedures by failing to place the

CIVIL NO. 09-1373 (JP)          -13-

order for the products requested by the customer and failing to correct this mistake. This necessitated the preparation of a new order form.

48. Plaintiff Sánchez-Ruiz was transferred back to Ferguson's branch in Carolina to give him a fresh start with a new Supervisor, Alfredo Burgos ("Burgos"), so he could improve his performance.

49. Plaintiff's new direct supervisor, Burgos, personally arranged for Plaintiff Sánchez-Ruiz to receive training on "Order Management Logs" ("OML").

50. On August 15, 2007, Plaintiff Sánchez-Ruiz informed Pizarro of his desire to work less hours. No medical certificate containing the nature of Plaintiff's alleged condition, nor the things he could or could not do in the workplace, was submitted in support of this request, and no reference to any medical condition was made in this communication.

51. On August 17, 2007, Pizarro admonished Sánchez-Ruiz for making mistakes in orders placed by one of Ferguson's main customers, failing to properly include the proper Purchase Order number, and not having completed his assigned tasks.

52. On August 20, 2007, Jara admonished Plaintiff for failing to process an order and not following the proper procedure for processing a particular client's quotes and orders.

CIVIL NO. 09-1373 (JP)          -14-

Plaintiff Sánchez-Ruiz admitted that he had received training on this procedure. As of August 30, 2007, Plaintiff had still not processed the order in question.

53. On August 28, 2007, Pizarro admonished Plaintiff for failing to process an order properly.

54. On September 1, 2007, Pizarro admonished Plaintiff for failing to follow up on five refunds and credits to be made to one of Ferguson's main clients.

55. At the time Plaintiff was terminated, he was still a sales trainee.

56. Upon being told by Jara that he had been terminated, Plaintiff Sánchez-Ruiz made no mention or reference about any medical condition or disability.

57. Noel Hernández had no direct or personal interaction with Plaintiff at any point in time either before, during or after Plaintiff's tenure with Ferguson.

58. Burgos did not participate in the decision to terminate Plaintiff.

59. Ferguson has another employee who suffers from multiple sclerosis in its employ. Unlike Plaintiff, this employee is still with the Company, has been with the Company for over ten years, and has been promoted on several occasions.

CIVIL NO. 09-1373 (JP)           -15-

60. Practically the entirety of Plaintiff Sánchez-Ruiz's work was done in an office setting.

61. Plaintiff's condition of multiple sclerosis did not limit in any way his ability to perform the duties of his position while with Ferguson.

62. As part of his medical treatment by his own treating physician and witness Dr. Luis Forastieri-Maldonado, Plaintiff was referred to Dr. Luis Sánchez-Longo for a Neuropsychological Test on or around September 17, 2007.

63. Plaintiff scored a GAF Score of "75" in his Neuropsychological Test, which was administered on or around October 31, 2007 and interpreted by Dr. Luis Sánchez-Longo as meaning that he had "no more than slight impairment in occupational functioning[,]" and was generally "functioning well", and by Dr. Luis Forastieri-Maldonado as an "almost normal" score.

64. Dr. Antonio Álvarez-Berdecía is a Neurosurgeon who belongs to the Puerto Rican Academy of Neurology and the Puerto Rican Academy of Neurophysiology, and has been certified in Evaluation and Disability Impairment Rating by the American Academy of Disability Evaluating Physicians and taken numerous continued education courses on disability and impairment evaluation.

CIVIL NO. 09-1373 (JP)            -16-

65.    As part of his functions as Defendants' expert witness, Dr. Antonio Álvarez-Berdecía examined Plaintiff's medical records and examined him personally on November 16, 2009.

66.    As part of his treatment of Plaintiff Sánchez-Ruiz, Dr. Ángel Chinea performed an Expanded Disability Status Scale ("EDSS") test on Plaintiff on January 19, 2005.

67.    Plaintiff Sánchez-Ruiz scored an EDSS Score of "3-3.5" in his Expanded Disability Status Scale ("EDSS") test.

68.    On November 20, 2009, Dr. Antonio Álvarez-Berdecía rendered an expert witness report in which he concluded that, although multiple sclerosis may be a potentially disabling condition, Plaintiff was not disabled, inasmuch as he suffered from a mild cognitive impairment that didn't impair work and could be improved with neuropsychological help.

69.    While he worked at Ferguson, Plaintiff played golf with his father, Jara and Pizarro.  He only played 14 or 15 holes, although he did play in a corporate tournament with Jara.   He only stopped playing golf after he left Ferguson.

70.    While he worked at Ferguson, Plaintiff Sánchez-Ruiz went to the beach on several occasions, where he rode his jet-ski.

CIVIL NO. 09-1373 (JP)              -17-

71. Plaintiff sometimes worked 10 hours or more daily, he would handle from 10 to 15 orders with multiple items, between 10 and 20 quotations, took care of the telephone, worked the counter during the lunch hour, filled in the counter to substitute other employees, worked the counter during the rush hour, worked the warehouse if the employees at the warehouse were not available, was in charge of two major clients, Baxter and PREPA, and did proof reading for Pizarro's English language documents. Additionally, at the end of the working day and by recommendation of Pizarro, he would go home and review product manuals to become familiarized with the company's products.

72. Plaintiff Sánchez-Ruiz suffers from exacerbations of his Multiple Sclerosis condition consisting of vertigo, loss of the ability to stand, loss of the ability to walk, loss of vision, loss of balance and fatigue.   Sánchez-Ruiz cannot bathe, drive a car, get dressed or watch television, since he is fully incapacitated during such periods.

73. Dr. Forastieri examined Plaintiff Sánchez-Ruiz during periods of high stress in his office and determined that Plaintiff's working conditions could produced

CIVIL NO. 09-1373 (JP)          -18-

exacerbations that could be so severe that he would loose
sight and the ability to walk permanently.

74. Defendant Pizarro worked as an inside salesperson for
    CESCO since 1997, when Ferguson purchased the company,
    when he occupied that position for two to three additional
    years.

75. Pizarro, Jara and Noel Hernández did not participate in
    the decision to recruit Sánchez-Ruiz for the sales trainee
    program.

76. Pizarro had never had a trainee under his supervision.

77. Pizarro knew Plaintiff Sánchez-Ruiz had been diagnosed
    with multiple sclerosis before Sánchez-Ruiz was hired by
    Ferguson. He thought it was not prudent to inform
    Ferguson that the Plaintiff suffered from this condition.
    Jara obtained knowledge of Plaintiff's diagnosis of
    multiple sclerosis through Dr. Chinea's medical
    certificate.

78. Jara and Pizarro never received training concerning
    Ferguson's policy concerning reasonable accommodation.
    Ferguson's Policy Manual does not include procedure or
    instructions for an employee to request reasonable
    accommodation.

79. Pizarro did not consider the requests made by Dr. Chinea,
    and by Sánchez-Ruiz, both orally and in writing, as valid

CIVIL NO. 09-1373 (JP)          -19-

requests for reasonable accommodation, although he admitted that Plaintiff halfway said it.

80. Pizarro knew that Plaintiff Sánchez-Ruiz traveled to attend medical appointments.

81. Sánchez-Ruiz was not the only employee that duplicated orders or made mistakes in quotations.

82. Plaintiff kept working with his Ponce Branch clients outside of the Ponce Office.

83. Defendant Jara understood that Pizarro had provided Sánchez-Ruiz with reasonable accommodation for the three months Dr. Chinea requested.

84. Defendant Jara knew that placing three different memos in Plaintiff's file on the same day provided sufficient reasons to fire him.

85. Defendant Jara said Noel Hernández gave instructions to Érica Fonseca to make the severance payment ("mesada") upon Plaintiff's dismissal.  He testified he did not know what exactly the word "mesada" or allowance meant as they appeared in the checks.

86. Érica Fonseca contradicted Jara's statements, made at his deposition, when she testified Jara gave her these instructions and explained to her that "even when the dismissal is justified we are going to pay him as if it were not justified."

CIVIL NO. 09-1373 (JP)          -20-

87.   Jara believed that a request for reasonable accommodation must include a request for a transfer.

88.   Defendant Jara testified he had channeled requests for reasonable accommodation to his superior Noel Hernández, who subsequently granted the accommodations.  Noel Hernández contradicted the testimony when he denied ever receiving any request for reasonable accommodation from Puerto Rico.

89.   Érica Fonseca, multiple sclerosis patient and Ferguson's employee, has never requested reasonable accommodation.

90.   Defendants' expert witness, Dr. Antonio Álvarez-Berdecía, testified that Plaintiff Sánchez-Ruiz could not predict when his exacerbations would occur.  He also stated that the exacerbations could be of present symptoms or of new symptoms altogether.

91.   Defendants' expert witness, Dr. Antonio Álvarez-Berdecía, testified that Plaintiff could be impaired in one of life's mayor abilities, which is the ability to stand during a period of exacerbation.

92.   Dr. Álvarez-Berdecía opined that Dr. Saúl Sadiq exaggerated a note that stated that "Mr. Sánchez suffers from pathological fatigue, pathological fatigue, gait imbalance, vertigo visual disturbance, bowel and bladder dysfunction."

CIVIL NO. 09-1373 (JP)          -21-

93.  Dr. Álvarez-Berdecía agreed that during an acute
     exacerbation Plaintiff cannot take care of his personal
     hygiene, which Dr. Álvarez-Berdecía states is a major life
     function.

94.  According to Dr. Álvarez-Berdecía, Plaintiff's prognosis
     is not good because his condition will eventually worsen.

95.  Noel Hernández never asked what kind of steps were taken
     to train Plaintiff.  He assumed Pizarro had treated
     Plaintiff as a trainee.

96.  Noel Hernández could not explain Ferguson's policy
     regarding persons who seek protection under the ADA.  He
     could only say they were an equal opportunity employer.

97.  Noel Hernández was never informed that Plaintiff had a
     medical condition.

## II.  LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

     Summary judgment serves to assess the proof to determine if
there is a genuine need for trial.  Garside v. Osco Drug, Inc.,
895 F.2d 46, 50 (1st Cir. 1990).  Pursuant to Rule 56(c) of the
Federal Rules of Civil Procedure, summary judgment is appropriate
when "the record, including the pleadings, depositions, answers to
interrogatories, admissions on file, and affidavits, viewed in the
light most favorable to the nonmoving party, reveals no genuine issue
as to any material fact and the moving party is entitled to judgment
as a matter of law."  Fed. R. Civ. P. 56(c); see also

CIVIL NO. 09-1373 (JP)          -22-

Zambrana-Marrero v. Suárez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993); Canal Ins. Co. v. Benner, 980 F.2d 23, 25 (1st Cir. 1992).  The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case.  See Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989).

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial.

CIVIL NO. 09-1373 (JP)          -23-

See <u>Anderson</u>, 477 U.S. at 248; <u>Celotex</u>, 477 U.S. at 324; <u>Goldman</u>, 985 F.2d at 1116.

III. **<u>ANALYSIS</u>**

Defendants argue that summary judgment is appropriate because Plaintiff cannot succeed on his ADA and Law 44 claims when: (1) Plaintiff is not disabled within the meaning of the ADA; (2) Plaintiff never requested a reasonable accommodation from Ferguson; (3) Plaintiff rejected Ferguson's offer to reduce his work hours; and (4) Plaintiff was terminated for a legitimate non discriminatory reason.  The Court will now consider Defendants' arguments in turn.[1]

A.   **<u>ADA</u>**

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C. § 12101(b)(1).  Under the ADA, certain employers are prevented from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

---

1.     In their motion for summary judgment, Defendants present arguments for both Law 44 and the ADA based on the legal standards of the ADA. The reason for this is that Defendant claims that Law 44 should be applied under the standards of the ADA. Based on the decision in this case and without deciding the issue, the Court will only analyze the ADA and not Law 44.

CIVIL NO. 09-1373 (JP)          -24-

When there is no direct evidence of intentional discrimination, the Court will apply the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999). Under said framework, Plaintiff bears the original burden of making out a prima facie case of discrimination. Dichner v. Liberty Travel, 141 F.3d 24, 29-30 (1st Cir. 1998). To make out a prima facie case, Plaintiff must show that: (1) Plaintiff suffers from a disability within the meaning of the ADA; (2) Plaintiff was able to perform the essential functions of the job either with or without reasonable accommodation; and (3) the employer discharged Plaintiff in whole or in part because of the disability. Oliveras-Sifre v. Puerto Rico Dept. of Health, 214 F.3d 23, 25 (1st Cir. 2000).

Once Plaintiff meets his burden, the burden shifts to Defendants to show a legitimate non discriminatory reason for the adverse action taken against the employee. Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 673 (1st Cir. 1996). If Defendants meets their burden, then Plaintiff has to show that Defendants' proffered non discriminatory reason is a pretext for discrimination. Id.

For the purposes of resolving this motion, the Court will assume that Plaintiff has met its prima facie burden and, as such, the Court will focus on Defendants' proffered non discriminatory reason and Plaintiff's arguments on pretext. The Court will do this because

CIVIL NO. 09-1373 (JP)          -25-

these two parts of the McDonnell Douglas burden shifting framework

are the dispositive sections in this case.

### 1.   Legitimate Non Discriminatory Reason

Defendants argue that the reason Plaintiff was terminated from

his employment with Ferguson was because of his inability to

adequately perform his duties and not because of his disability.

Specifically, Defendants point to the record and show that:

(1) Plaintiff made numerous mistakes while working at Ferguson;

(2) even after receiving an extremely poor review, Plaintiff did not

improve and continued to commit numerous mistakes; (3) Plaintiff was

properly trained by Ferguson to perform his job; (4) the decision to

terminate Plaintiff was based on an objective assessment of his

performance; (5) Ferguson gained nothing from Plaintiff's dismissal;

(6) Ferguson attempted to provide Plaintiff with a good environment

for him to develop; (7) Ferguson was flexible with accommodating

Plaintiff's needs; (8) Ferguson does not tolerate discrimination and

is committed to developing a workplace that is free of

discrimination; (9) another employee at Ferguson has, like Plaintiff,

multiple sclerosis and has been promoted on several occasions; and

(10) Plaintiff never complained of discrimination while working at

Ferguson.

After considering the evidence, the Court determines that

Defendants have submitted sufficient evidence for a jury to find that

the reason for dismissing Plaintiff was based on his job performance

CIVIL NO. 09-1373 (JP)          -26-

and not because of his disability.  As such, the burden shifts to Plaintiff to show that the reason provided by Defendants was only a pretext for the discrimination.  Mulero-Rodríguez, 98 F.3d at 673.

### 2.   Pretext for Discrimination

During this stage of the McDonnell Douglas framework, a Plaintiff may attempt to show that he was the victim of intentional discrimination by showing that Defendants' explanation "is unworthy of credence."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).  To demonstrate pretext, a Plaintiff can show "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' such that a factfinder could 'infer that the employer did not act for the asserted non-discriminatory reasons.'"  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000).

Plaintiff argues that Defendants' proffered reason is a pretext for disability discrimination.  To show pretext, Plaintiff presents arguments related to: (1) Defendants allegations that Plaintiff did not properly perform his job; (2) the decision by Noel Hernández to terminate Plaintiff; and (3) the other employee with multiple sclerosis.  The Court will address each of them in turn.

#### i.  Plaintiff's Job Performance

In his opposition to the motion for summary judgment, Plaintiff argues that of the twenty incidents in which Defendants allege that Plaintiff violated Ferguson's policies and procedures only four

CIVIL NO. 09-1373 (JP)          -27-

involved failure to follow procedure and none of the reprimands explained what procedure was violated. Also, Plaintiff argues that, based on his own calculations, the twenty mistakes were made in the process of conducting around ten thousand transactions. Lastly, Plaintiff relies on a document to state that Plaintiff had the highest profit numbers amongst his co-workers.

Taking the evidence in the light most favorable to Plaintiff, the Court determines that no reasonable jury could find that Defendants' non discriminatory reason for dismissing Plaintiff was a pretext. Even if there are only four incidents of violation of procedure and none of them cite to the exact procedure, the undisputed evidence makes clear that Plaintiff's job performance was lacking. The undisputed facts show that: (1) Plaintiff was reprimanded by Ferguson for failing to perform his job properly on at least fourteen occasions;[2] (2) Plaintiff made at least seventeen mistakes and/or did not follow instructions;[3] (3) Plaintiff was negatively reviewed;[4] and (4) Ferguson's clients complained about Plaintiff.[5]

---

2.    ISC UMF 17 and 20, and UMF 25, 27, 30, 36, 37, 38, 39, 40, 45, 51, 52, 53, and 54.

3.    UMF 26, 27, 28, 29, 36, 37, 38, 39, 40, 44, 45, 46, 47, 51, 52, 53, and 54.

4.    ISC UMF 22 and UMF 41.

5.    UMF 29, 30 and 46.

CIVIL NO. 09-1373 (JP)          -28-

    Taking Plaintiff's calculations that Plaintiff made twenty mistakes out of ten thousand transactions as true, the Court determines that said evidence is not sufficient to show pretext because Plaintiff's calculations are based on Plaintiff's full two years of employment with Ferguson.  The uncontested facts show that, from April 2007 until Plaintiff's dismissal on September 6, 2007, Plaintiff improperly performed his job duties and/or was reprimanded by Ferguson at least eighteen times.[6]  In addition, at least seven of those incidents occurred in the months of July and August of 2007.[7]

    Lastly, the Court finds that the document referenced by Plaintiff does not support the conclusion that Plaintiff had the highest profit numbers among his co-workers.  The document states that Plaintiff had higher sales than one co-worker and lower sales than another.  The only information supporting Plaintiff's conclusion is that Plaintiff had the highest profit percentage.  However, said document only refers to data up to the end of May 2007.  Moreover, the document only compares Plaintiff with two of his co-workers.  As such, the document does not support Plaintiff's conclusion. Accordingly, the Court finds that, even taking Plaintiff's arguments as true, no reasonable jury could find based on this evidence that

---

[6].   ISC UMF 19, 20, and 22, and UMF 29, 30, 36, 37, 38, 39, 40, 44, 45, 46, 47, 51, 52, 53, and 54.

[7].   UMF 44, 45, 46, 47, 51, 52, and 53.

CIVIL NO. 09-1373 (JP)          -29-

Defendants proffered reason of poor job performance is a pretext for discrimination.

     *ii.  Noel Hernández's Decision to Terminate Plaintiff*

Plaintiff also relies on Noel Hernández's decision to terminate Plaintiff. Specifically, he argues that Defendants' proffered reason is a pretext because: (1) Jara was aware that by putting the memos in Plaintiff's file there was sufficient evidence to terminate him; (2) Noel Hernández made the decision to dismiss Plaintiff based on documents provided by Jara and Pizarro; and (3) the second evaluation of Plaintiff was done after Plaintiff requested an accommodation.

Even taking Plaintiff's allegations as true, the Court concludes that no reasonable jury could conclude that Defendants' proffered reason for dismissing Plaintiff is a pretext.  The fact that Jara knew that by putting the three memos in Plaintiff's file there would be sufficient cause to dismiss Plaintiff is not sufficient evidence for a jury to infer that Plaintiff was not dismissed for his work product.  This is the case because Plaintiff has not presented evidence to challenge the validity of the memos reprimanding Plaintiff or any evidence that Jara did it with the intention of having Plaintiff dismissed. Without any evidence that the memos were unwarranted, no reasonable jury could conclude the decision made by Noel Hernández, and not Jara, to dismiss Plaintiff was not made because of Plaintiff's poor job performance.  This is especially the

CIVIL NO. 09-1373 (JP)          -30-

case in the light of the uncontested fact that Noel Hernández was not informed of Plaintiff's medical condition.  UMF 97.

Similarly, Plaintiff's argument that the second evaluation[8] was done after Plaintiff's alleged request for a reasonable accommodation is not sufficient evidence for reasonable jury to find pretext.  The undisputed evidence shows that in the July 2, 2007 evaluation Plaintiff was given a rating of "need[s] improvement" in practically every area and found not to even "meet expectations" in any area. ISC UMF 22.  In support of said evaluation, Defendants had the numerous instances of Plaintiff's mistakes and/or reprimands that occurred prior to the evaluation.[9]  Furthermore, Plaintiff signed the evaluation, did not object to it, and accepted its findings.  UMF 41. Plaintiff has not presented evidence that said mistakes and/or reprimands were either incorrect or unwarranted.  As such, the Court concludes that the fact that Defendant Jara and Pizarro knew of Plaintiff's condition is not sufficient for a reasonable jury to conclude that the evaluation was based on anything but his performance.

Plaintiff's argument that Noel Hernández's decision was based on documents provided by Jara and Pizarro suffers from the same fate. It is uncontested that Jara and Pizarro were Plaintiff's supervisors

---

8.   The Court notes that Plaintiff has not stated which is the second evaluation. Based on the record before the Court, the Court determines that Plaintiff is referring to the July 2, 2007 evaluation.

9.   ISC UMF 19 and 20, and UMF 28, 29, 30, 36, 37, 38, 39, and 40.

CIVIL NO. 09-1373 (JP)          -31-

while at Ferguson.  ISC UMF 6.  As such, they are the parties who
would provide Noel Hernández the documentation on Plaintiff.  As has
been determined by the Court, there is ample evidence supporting the
conclusion that Plaintiff was not properly performing his job.  As
such, the fact that Jara and Pizarro were aware of Plaintiff's
condition is not enough for a reasonable jury to conclude that
Plaintiff's dismissal was not because of his inability to adequately
perform his job.  Accordingly, the Court determines that based on
this evidence no reasonable jury could conclude that the proffered
reason was a pretext.

      *iii. Other Employee with Multiple Sclerosis*

      Plaintiff also argues that Defendants reliance on the fact that
Ferguson has another employee with multiple sclerosis is misplaced
because said employee never requested a reasonable accommodation.
Even taking Plaintiff's allegation as true, the fact that the other
employee did not request a reasonable accommodation in no way shows
a pretext on the part of Defendants.  In light of all the uncontested
evidence showing Plaintiff's poor performance, the Court determines
that no reasonable jury could determine that the other employee with
multiple sclerosis was promoted while Plaintiff was dismissed because
the other employee did not request an accommodation without some
evidence that the reason why the other employee has succeeded is
because she has not requested an accommodation.  Accordingly, after
considering all the evidence and arguments raised by Plaintiff, the

CIVIL NO. 09-1373 (JP)           -32-

Court determines that Plaintiff has failed to show that the non discriminatory reasons proffered by Defendants are a pretext. <u>Mulero-Rodríguez</u>, 98 F.3d at 673.  As such, the Court will dismiss the ADA claims.

> **B.   <u>Puerto Rico Law Claims</u>**

Plaintiff also brings claims arising under Puerto Rico law, specifically Law 44 and Law 80.  Dismissal of pending state law claims is proper because an independent jurisdictional basis is lacking.  Exercising jurisdiction over pendent state law claims once the federal law claims are no longer present in the lawsuit is discretionary.  <u>See</u> <u>Newman v. Burgin</u>, 930 F.2d 955, 963 (1st Cir. 1991) (holding that "[t]he power of a federal court to hear and to determine state-law claims in nondiversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit . . . [and] the district court has considerable authority whether or not to exercise this power, in light of such considerations as judicial economy, convenience, fairness to litigants, and comity[]").

In the instant case, the Court chooses not to hear the state law claims brought by Plaintiff.  Therefore, the Court will dismiss the state law claims without prejudice.

CIVIL NO. 09-1373 (JP)          -33-

IV.   **CONCLUSION**

In conclusion, the Court **GRANTS** Defendants' motion for summary judgment.  The Court will enter a separate judgment dismissing the complaint.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of February, 2010.

                                    s/Jaime Pieras, Jr.
                                  JAIME PIERAS, JR.
                              U.S. SENIOR DISTRICT JUDGE